J-S13003-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: N.G., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: W.G., FATHER | |
| | No. 1294 WDA 2023 |

Appeal from the Order Entered September 19, 2023
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000067-2022

BEFORE:   KUNSELMAN, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED: May 14, 2024**

W.G. ("Father") appeals from the September 19, 2023 order entered by the Court of Common Pleas of Allegheny County granting the petition filed by the Allegheny Office of Children, Youth and Families ("CYF") seeking the involuntary termination of Father's parental rights to his biological daughter, N.G. ("Child"), born in December 2016.[1]  After careful review, we affirm.

From the time of her birth in December 2016 to May 2020, Child was in the sole custody of her biological mother, L.H. ("Mother").  Notes of Testimony (N.T.), Termination Hr'g, 9/15/23, at 81.  Although Child was removed from Mother's care by CYF for a short period of time at the time of her birth, Child was returned to Mother's care.  N.T. at 83.  CYF reported that Father's contact

---

[*] Former Justice specially assigned to the Superior Court.
[1] The same order involuntarily terminated the parental rights of Child's biological mother, L.H. ("Mother").  Mother has also filed an appeal which this Court has resolved in a separate decision docketed at 1420 WDA 2023.

with Child in the first three years of her life was minimal and the only record of his involvement was at Child's birth. N.T. at 121.

On May 29, 2020, CYF obtained an emergency custody authorization (ECA) for Child after police found Mother in an intoxicated state while caring for Child. N.T. at 86-87. Mother admitted to caseworkers that she had shaken and threatened Child. N.T. at 86-87, 125. While Father's whereabouts were initially unknown, CYF later ascertained that Father was incarcerated. N.T. at 87, 115. CYF placed Child into kinship care with T.W. ("Foster Mother").

Child was adjudicated dependent on June 17, 2020. N.T. at 88. Foster Mother was appointed Child's secondary medical and dental decision maker on September 23, 2020. N.T. at 88. After Child's removal from Mother's custody in May 2020, Child remained in the same placement with Foster Mother, who wishes to adopt Child. N.T. at 88.

Father was given several court-ordered goals including undergoing drug and alcohol evaluations, submitting to drug screens, complying with genetic testing, participating in supervised visits with Child, and addressing any criminal charges. N.T. at 91. The orphans' court held regular adjudication hearings for which both parents were given notice. N.T. at 118. Father attended one hearing in February 2022. N.T. at 89, 118. The orphans' court also held teaming and conferencing on a regular basis, but Father did not attend any of the meetings. N.T. at 89-90.

Father sent CYF written letters, indicating that he opposed Child's adoption, wanted Child to live with his mother ("Paternal Grandmother"), and

requested visitation. N.T. at 118. CYF attempted to contact and assess Paternal Grandmother as a possible placement, but she expressed no interest in following through with this arrangement. N.T. at 120.

Father had a few phone calls with Child from prison, but this arrangement was ended as Foster Mother was uncomfortable with the way Father communicated with Child. N.T. at 119. While CYF attempted to set up visits through the Washington County Jail, caseworkers encountered barriers to obtaining authorization to do so. N.T. at 119. When visits were finally arranged, Father was transferred to a different jail. N.T. at 119. CYF stopped attempting to arrange visitation upon the recommendations of Dr. Patricia Pepe, Ph.D., a licensed psychologist who evaluated Mother and Child. Dr. Pepe indicated that visitation would not be beneficial to Child partly due to the fact that she has no real concept of who Father is as Child had only seen him once since her birth. N.T. at 120.

On May 22, 2022, CYF filed petitions to terminate the parental rights of both Father and Mother pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8) and (b). On August 4, 2022, the orphans' court entered an order appointing Andrea Spurr, Esq. as Child's counsel to represent her legal interests in the termination hearing. *See* Order, 8/4/22, at 1.[2]

---

[2] Section 2313 of the Adoption Act provides that:

> [t]he court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being

*(Footnote Continued Next Page)*

At the September 15, 2023 termination hearing, CYF presented the testimony of Rachael Alanskas, CYF caseworker, as well as Dr. Pepe. Father and Mother testified telephonically and represented by separate counsel. Child, who was six years old at that time, was not present but was represented by her legal counsel, Atty. Spurr.

Ms. Alanskas indicated at the termination hearing that on July 7, 2022, Father was sentenced to thirty-five to seventy years' imprisonment on charges including drug delivery resulting in death. N.T. at 115-116.

---

contested by one or both of the parents. The court may appoint counsel or a guardian *ad litem* to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child.

23 Pa.C.S.A. § 2313(a). Our Supreme Court has held that with respect to contested involuntary termination of parental rights ("TPR") proceedings, Section 2313 requires a trial court to "appoint an attorney to represent the Child's *legal* interests, *i.e.*, the child's preferred outcome." **In re T.S.**, 648 Pa. 236, 239–40, 192 A.3d 1080, 1082 (2018) (citing **In re Adoption of L.B.M.**, 639 Pa. 428, 161 A.3d 172 (2017)) (emphasis added). Further, the Supreme Court has provided that "appellate courts should engage in limited *sua sponte* review of whether children have been afforded their statutory right to legal counsel when facing the potential termination of their parents' parental rights." **In re Adoption of K.M.G.**, 663 Pa. 53, 87, 240 A.3d 1218, 1238 (2020).

In this case, the orphans' court appointed conflict counsel Andrea Spurr to represent Child's legal interests in the termination hearing. Atty. Spurr did not previously serve in this case as a guardian *ad litem* or in any other capacity which would present a potential conflict in her role as legal counsel.

We also observe that the Supreme Court has noted that the Adoption Act does not require the appointment of a guardian *ad litem* in contested TPR proceedings, as "per the General Assembly's directive [in Section 2313], no attorney is assigned to represent the child's best interests." **In re Adoption of L.B.M.**, 639 Pa. at 443 n. 14, 161 A.3d at 181, n. 14.

- 4 -

By order dated September 19, 2023, the orphans' court involuntarily terminated Father and Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b). On October 19, 2023, Father filed a notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The orphans' court filed its Rule 1925(a) opinion on January 8, 2024.

Father raises the following issues for review on appeal:

1. Whether the trial court erred and/or abused its discretion by finding that [CYF] established by clear and convincing evidence that grounds exist to terminate the parental rights of Father [] under 23 Pa.C.S.[A.] § 2511(a)(2), (5), and (8).

2. Whether the trial court erred and/or abused its discretion by finding that [CYF] established by clear and convincing evidence that the termination of Father's parental rights served the needs and welfare of the minor child pursuant to 23 Pa.C.S.[A.] § 2511(b).

Father's Brief, at 6.

Our review of involuntary termination decrees "is limited to a determination of whether the decree of the termination court is supported by competent evidence." *In re Adoption of C.M.*, 255 A.3d 343, 358 (Pa. 2021). When applying this standard, appellate courts must accept the orphans' court's findings of fact and credibility determinations if they are supported by the record. *In the Interest of S.K.L.R.*, 256 A.3d 1108, 1123 (Pa. 2021). "Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion." *In re Adoption of*

*L.A.K.*, 265 A.3d 580, 591 (Pa. 2021). An appellate court may reverse for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id*.

Termination of parental rights is governed by Section 2511 of the Adoption Act. If the orphans' court determines the petitioner established grounds for termination under subsection 2511(a) by clear and convincing evidence, then the court must assess the petition under subsection 2511(b), which focuses on the child's needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). We need only agree with the orphans' court as to any one subsection of Section 2511(a), in addition to Section 2511(b), to affirm an order terminating parental rights. *In re D.L.B.*, 166 A.3d 322, 327 (Pa.Super. 2017) (citing *In re M.M.*, 106 A.3d 114, 117 (Pa.Super. 2014)).

Our analysis in this case will focus upon Section 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
> > . . .

> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of

- 6 -

environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(a)(2), (b).

With regard to termination of parental rights pursuant to Section 2511(a)(2), this Court has held that:

> [i]n order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted).

Our Supreme Court, in addressing the grounds for termination under Section 2511(a)(2), determined that "incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the parent's remaining term of incarceration can be "highly relevant to whether the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." *In re Adoption of S.P.*, 47 A.3d 817, 830 (Pa. 2012) (finding trial court was within its discretion to terminate the father's parental rights given that the father had been incarcerated prior to the child's birth, the child was now nearly five years old,

Father did not have a certain parole date, and even if released, Father could not estimate when his incapacity to parent would be remedied).

Our review of the record supports the orphans' court's conclusion that CYF presented sufficient grounds for the termination of Father's parental rights under Section 2511(a)(2). Father has never had Child in his custody at any point in her life and Father has been incarcerated since Child was adjudicated dependent in June 2020. Father has had no visitation with Child nor has seen Child during the entire dependency proceedings. Father did not inquire about Child's physical or emotional well-being and failed to send any cards, letters, or gifts to Child. While Father sent letters to CYS expressing disapproval with Child's potential adoption and demanded that Child be placed with Paternal Grandmother, CYF did not pursue this placement option as Paternal Grandmother showed no interest in the arrangement.

It is undisputed that Father has been sentenced to thirty-five to seventy years' imprisonment on felony charges including drug delivery resulting in death. N.T. at 115-116. Based on the length of Father's prison sentence, Father's incapacity to care for Child will continue to exist in the future and cannot be remedied as Child will be well into adulthood even at Father's earliest potential release date. This prospect is simply unacceptable for Child, who was six years old and already in the custody of CYF for over two years at the time of the termination hearing.

As this Court has recognized, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting

responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa.Super. 2006).

Therefore, the record substantiates the conclusion that Father's repeated and continued incapacity, abuse, neglect, or refusal has caused Child to be without essential parental control or subsistence necessary for her physical and mental well-being. *See In re Adoption of M.E.P.*, 825 A.2d at 1272. Moreover, Father cannot or will not remedy this situation. *See id.* Thus, we conclude that the orphans' court did not err in finding sufficient grounds exist for the termination of Father's parental rights under Section 2511(a)(2).

As noted above, in order to affirm a termination of parental rights, we need only agree with the orphans' court as to any one subsection of Section 2511(a) before assessing the determination under Section 2511(b), and we, therefore, need not address any further subsections of Section 2511(a). *In re D.L.B.*, 166 A.3d at 327.

We now turn to consider whether involuntary termination was appropriate pursuant to Section 2511(b), which affords primary consideration to the developmental, physical, and emotional needs and welfare of Child. *See* 23 Pa.C.S.A. § 2511(b). With respect to the mandatory bonding assessment, we note that the certified record discloses no evidence of an arguable bond existing between Father and Child. Given the absence of any

affirmative indications to the contrary, it is reasonable to conclude that no parental bond exists between Child and Father. ***See Matter of M.P.***, 204 A.3d 976, 984 (Pa.Super. 2019) ("Where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists"). Indeed, Father had minimal contact with Child in the first three years of her life and Father and Child had not had any contact with one another for well over two years at the time of the termination hearing.

Concomitantly, the orphans' court recognized that Child shares a strong parental bond with Foster Parents, whom she calls Mom and Dad. Orphans' Court Opinion (O.C.O.), 1/8/24, at 9; N.T. at 124. The orphans' court noted Child also has an attachment to her siblings in her foster home, which includes a biological sibling. The orphans' court emphasized Dr. Pepe's findings that upon observing an interactional evaluation between Foster Mother and Child, Foster Mother was committed to the Child, "exhibited positive and appropriate parenting skills and had a very good understanding of [Child]." ***Id.*** at 6. The orphans' court observed that "[t]he stable environment provided by the Foster parents has allowed [Child] to thrive." O.C.O. at 9. The orphans' court highlighted that Foster Parents wish to adopt Child. ***Id.*** at 15.

Accordingly, we discern no abuse of discretion by the orphans' court in concluding that the termination of Father's parental rights serves the developmental, physical, and emotional needs and welfare of Child. Thus, we affirm the order pursuant to Section 2511(a)(2) and (b).

Order affirmed.

Judge Kunselman did not participate in the consideration or decision of this case.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 05/14/2024